and Michael Kaling. And my colleagues, Mr. Nishimura and Mr. Edwards, are here. Mr. Edwards will also be arguing, and we are going to join in the arguments that he makes as well. I'm going to reserve five minutes. And defer to my colleague, Mr. Edwards, about seven minutes into my presentation. As long as you know you have 20 minutes total for your side. We understand that. Very good. So if I may proceed, what I'd like to invite Your Honor's attention to principally, in addition to the briefing, is the recent decision by this Court in United States v.  Moran, which was a reversal of a determination by the district court that Moran was entitled to introduce evidence of instructions or guidance she got from her tax advisors, her CPA. And the district court excluded that on the grounds that it was hearsay. Whether it was hearsay or not is a matter of law, and it's a matter of law if it was not hearsay, I think. Okay. In the case before us, the judge excluded certain evidence received, which the defendants wanted to offer as to what they had been told, on the grounds of it being cumulative. The test for determining whether a district judge correctly or incorrectly excluded evidence as being cumulative is a question of abuse of discretion. Isn't that so? Well, it depends on whether the balancing test has been performed, Your Honor. And I must respectfully disagree with one thing Your Honor just said. The evidence that Mr. Hardy wanted to offer and that Ms. Supnot's counsel should have tried to offer on her behalf pertaining to the events that arose from the prosecution of Mr. Hardy, not for any tax crimes, but instead for money laundering, was not excluded merely because it was cumulative. It was excluded because it was hearsay. And just as Your Honor noted, that was erroneous. There were additional erroneous rulings that excluded evidence as being cumulative as well. That had to do with the interview that Mr. Hardy had in 1984 that went for 70 minutes when he was interviewed under oath by Special Agents Campalone and Banfi. Wasn't the exclusion for hearsay grounds exclusion of statements made by the defendant? Didn't the judge say when a defendant wants to introduce evidence of what he said outside of the courtroom, that's hearsay if it's offered by the defendant. Wasn't that the hearsay exclusion? Your Honor may well be referring to the videotape that was excluded. But that's another issue that I'm not abandoning it, but I don't think that needs to be argued. I think that is clearly presented in the briefs. Well, what is the hearsay exclusion? The hearsay exclusion, I'm sorry. In this case, what evidence was excluded on hearsay grounds? All of the evidence that Mr. Hardy wanted to offer about his state of mind based on what he was told and what he heard his attorney, Alexander Silvert, say. All of the evidence? Yes, Your Honor. He had, and the record is quite detailed, as to the evidence that Mr. Hardy wanted to proffer from his former attorney, and he wanted to offer the transcript of the interview from 1984, and all of that was excluded. He wanted to offer the arguments made in his prior litigation by his attorney? Yes, because the arguments he wanted to offer were specifically that all the conduct for which he was prosecuted and convicted here was entirely legal. And Mr. Hardy relied on that. He also had expert testimony, quote, end quote, expert testimony, that he wanted to offer from third-party professionals to the effect that filing income tax returns was voluntary. Basically, this case, the erroneous rulings, and the type of evidence are exactly the same type, and the errors are exactly the same errors that were made in the Moran case. Well, with respect to the 1984 evidence, which was the interview with the FBI? IRS agents, Your Honor. IRS, excuse me, IRS agents. Wouldn't it be proper to exclude that simply for lack of probative value? The fact that there was a conference doesn't mean that he, his conduct was necessarily legal, does it? Well, it depends on the content of the conversation, Your Honor. And in this particular case, the content of the conversation would have been devastating to the government, because it totally corroborated what Mr. Hardy testified to. And the same observation was made in connection with reversing the Moran's convictions, that testimony that corroborates the defendant's versions of events is anything but cumulative. And what took place during that conference that was tape recorded, and the government lost the tape for some strange reason, but still, the transcript was there. And on the transcript, these two IRS agents, special agents, confirmed for Mr. Hardy in detail that if he believed he wasn't required to file an income tax return, then his failure to do so was not criminal. Now, that's the essence of the whole defense in this case. So it's a state-of-mind defense. You're not relying on the IRS agents to establish a point of law with respect to that? No, no. Only for the belief that Mr. Hardy had that he was not required to file an income tax return. It's perfectly analogous to Ms. Moran wanting to testify about what other people told her with respect to her tax-filing obligations and why none of that was hearsay, because it was not offered for the truth. It was only offered for reliance. Now, Mr. Moran's convictions were also all reversed because the advice was given to both of them. And the same analysis applies here for Mrs. Subnett, even though her attorney basically turned on her. This is briefed extensively, and I don't know how much time the Court wants to devote to rehashing the unfortunate series of events that led to her attorney moving to withdraw, but this was demanded by Ms. Subnett. I have now used up seven and a half minutes of my time, and I'd like to reserve five minutes for rebuttal if I might. But if you have questions now, thank you. No questions at the moment, counsel. We'll hear from co-counsel. Yes, Your Honor. My learned colleague, Mr. Edwards. Mr. Edwards. I'm Barry Edwards. I'm speaking on behalf of Fred Ortiz, whose factual circumstances in this case differed markedly from those of the other defendants. I've briefed that succinctly, and I end. Basically, I wanted to point out that Mr. Ortiz suffered from the fact that no First Amendment instruction was given by the Court, despite the fact that there was substantial evidence in the record which merited such an instruction. Is this the advocacy issue? This is not just the advocacy issue. This is First Amendment. Well, yes. I mean, it's the First Amendment argument, the advocacy part of it. Right. Right. There are two parts. There's was the First Amendment instruction properly not given, and the answer is no, it should have been given because there was evidence in the record that Mr. Ortiz, the jury should have been able to consider whether or not Mr. Ortiz's opinion was intended to be and was likely to incite imminent lawlessness. But there was evidence of more than advocacy, was there not? Not with regard to Mr. Ortiz. There was Mr. Ortiz gave an opinion. He got paid $25 or $50 for it by the Research Foundation. He testified that he believed in his opinion. He didn't join the Research Foundation. He didn't participate in their seminars. He didn't sell their products. Was there evidence that he did not know how his letters were being used? There was no evidence that he did know how these letters were being used. No, I beg your pardon, that he did not know how the letters were being used. There was no evidence that he did not know how the letters were being used. But I don't think that matters. That was an issue certainly for the government to argue if a First Amendment instruction had been given. But the evidence that the evidence is that he believed in his opinion, that he openly advocated the opinion for years, argued about it in the press with the Senator for Hawaii and with the Internal Revenue Service and others. You have in the excerpt of record the newspaper articles which were basically letters to the editor to that effect. So his opinion was entitled to consideration by the jury as to whether or not it was criminal under Brandenburg and, furthermore, whether or not it was an advocacy of any type of unlawful behavior. Reading the letter itself, you won't find Mr. Ortiz saying, break the law, don't follow tax return, follow my instructions. He says, it's my opinion that you don't have to follow tax return because it's purely voluntary. That merited First Amendment consideration by the jury. That was the reversible error. The second issue, Judge O'Scanlan, that you raised is whether or not this type of advocacy could be criminal under the fraud clause, the defraud clause of this particular statute. And Mr. Ortiz's letter is not like the McCoy case, which I cited in my brief, where you had the gang member who's telling another gang how they can be a more effective gang. Even McCoy couldn't be, was not convicted because of his statements. He was openly advocating that a gang run its activities in a certain way, but it was advocacy and it wasn't held to be sufficient to base criminality. So I'm relying principally on Freeman and on Hammerschmidt and Caldwell, and, of course, pointing out to you that if you look at the facts which I've recited, both in the opening brief and reminded the Court of in the reply brief, the evidence in the record entitles Mr. Ortiz to the First Amendment instruction. Freeman is very strong on that point. And because of that, his conviction should be reversed. He should get a new trial. Thank you, Counsel. Mr. Cohen, I gather you reserve the remaining time for a rebuttal. You're reserving the remaining time for a rebuttal. Yes. It's about 7 minutes and something. Very good. All right. We'll hear from the government. May it please the Court. I'm Gregory Davis representing the United States. With me at counsel's table is Assistant U.S. Attorney Claire Connors from the District of Hawaii. Dealing first with Judge Sand's question, the hearsay objection was to the statements made by Attorney Silvert. That was what the district court was basing the rejection of. That was the only instance in which the district court said those are excludable for hearsay purposes, because basically the district court said it's rank hearsay what Mr. Silvert said during the trial in the structuring and money laundering counts. For the rest of the case that's not, not excluding what the defendant heard. No, Your Honor. Kennedy, your brief is page 46, which is where you have the rank hearsay, right? Correct. Yes. The district court was very careful in excluding statements from the period, the 1990 indictment on structuring and money laundering, the 1992 trial, because the court the evidence was cumulative. The court made very clear in, as we excerpt at pages 46 to 48 of our brief, one of the major reasons the court was excluding the proposed testimony was that it was cumulative to what the defendant had already testified. As we also argue in our brief, defendant Hardy had testified that beginning in the early 1970s, and certainly by the middle of the 1980s, he had already decided that he was not a person required to file taxes, to file tax returns or pay taxes. Whatever additional persuasive value this would offer in terms of establishing or showing his acclaimed good-faith belief was more than outweighed, as the district court made clear, and it's careful 403 analysis, by the risk of confusion, the cumulative nature, the possibility of injecting these 1990 and 1992 non-tax-related matters into the instant case. Contrary to what Mr. Cohan said, the defendant was able to afforded the opportunity and did indeed offer the opinion letters that he claimed to have relied upon. This is not the Moran case. As the Court is probably aware, I was the attorney who argued the Moran case. So I'm relatively familiar with how we lost, and we lost based on the hearsay exclusion of statements as hearsay, which were not hearsay. That's not this case. Hardy's own testimony in terms of his beliefs, his claimed beliefs, was the best evidence. He was able to testify about the he testified that he was not convicted, he had not been convicted of any crime, so he was able to get that before the jury. He was able to tell to testify briefly about the 1990 and 1992 matters. Respecting the IRS agent interview in the 1980, in 1984, the agents made it clear numerous, on numerous occasions, that they were not there to offer, they were not allowed to offer information, advice, or legal advice to the defendant. The defendant testified at length about his statements there. The Court properly concluded that anything additional by including the transcript was going to be cumulative in nature and would serve no useful purpose. Moving on to Ortiz, if the Court ---- Mr. Ortiz not only sold opinion letters for profit. He was also the trustee of Gene Hardy's Trust, defendant Hardy's father's trust. That's at volume 7 of the transcript, page 55. He was paid in cash by Ursula Supnett for his opinion letters. He continued to make misstatements and misrepresentations about what he had been told even after Senator Inouye and others had specifically directed him to cease and desist. He was doing far more than merely engaging in advocacy. He was an active participant. Could you explain a bit further how he was an active participant? We know that he was paid for his opinion letters, and you've now mentioned he's the trustee of the Gene Hardy, I guess, Trust. What other connections did he have with this group? What other actions other than merely publishing his opinions? Well, there was evidence in the record that as early as 1980, he was assisting Mr. Hardy in obtaining a fraudulent Federal loan. He provided tax returns. He prepared tax returns for Mr. Hardy that he knew were not going to be filed. He also ---- there's a strong indication he was a tax return preparer as an occupation. The fact that he didn't tell his clients that, guess what, there's this wonderful thing I can tell you, you don't have to pay taxes or file tax returns, it's a strong indication that he was well aware that what he was doing in the conspiracy was criminal. I'm not quite sure I understand that argument. If he prepared the tax returns, he has no responsibility for being sure they get filed. He simply is a ---- No, he was preparing as a business. He sold ---- he paid ---- he was a paid return preparer for people who properly filed and prepared returns. Right. The fact that he ---- There's nothing criminal about that. Nothing. No, in fact, we encourage that. We're happy when return preparers do that. No, it's the fact that he was not telling his ---- these clients for whom he was preparing returns that there was this wonderful system that you could purchase from the Research Foundation that would take you out of the tax system. It's a strong indication that he was aware. Well, which way does that cut? That cuts against your argument, does it not? No, it cuts in the fact ---- it shows his knowledge. It shows guilty knowledge on his part. It shows that he knew what the law was. He testified that he knew the law. You're saying that if, in fact, he knew people didn't have to file, he would have told other clients that? Is that what you're saying? We would certainly believe that that's an inference that the jury can draw. The strongest evidence, of course, is that he was preparing return ---- he was preparing opinion letters for pay. He sent at page 141 of the government's excerpts of record, we have a letter sent prepared for Mr. Ortiz to be sent to an employer verifying that one of his clients was exempt and did not have to have income tax withheld from her wages. He, as I said, he served as the trustee for one of Gene Hardy, for Gene Hardy's trust. Now, granted, Mr. Ortiz does not have ---- Now, the context of this argument is whether or not it was error to fail to give the First Amendment instruction. Your Honor, we believe that that instruction was covered by the good faith instruction given by the district court. If the defendant believed for whatever reason that his conduct was not part of a ---- was not intended to defraud, the jury could not have convicted him. So the instruction was covered. The defendant is not entitled to a ---- But they argued, in fact, they put on testimony, did they not, that this was mere advocacy and there was nothing ---- that whatever else went on with these other activities and the research foundation and the trust and all that sort of thing did not include him. He certainly made that argument, but the evidence ---- Well, isn't he then entitled to an instruction along his theory of a case? He made the argument, but the evidence didn't support the argument. The evidence was that he did more than merely advocate. He sold opinion letters. He acted as a trustee. He provided letters to customers to give to their clients that they didn't have to have ---- But where do we draw the line between what the jury can believe and what the defendant's theory of his defense is? I'm not sure I entirely understand the question, Your Honor. Well, you're pointing to evidence which showed more than mere advocacy. Correct. But, of course, isn't it up to the jury to determine whether that evidence is valid or not? It is, and they could do that with respect to the good faith belief ---- good faith defense instruction. If he believed for whatever reason that he was not conspiring to defraud, that his actions did not constitute conspiracy to defraud, the jury could not have found that he acted willfully and therefore could not have convicted him. So you're just relying on the general good faith instruction? Well, I'm relying on that in addition to the other evidence that we showed, the points that he did more than merely advocate. If the Court has no further questions, the Government will rest on its brief. Thank you, counsel. Thank you. We'll hear from Mr. Edwards. Thank you, Judge. First of all, trustee of Gene Hardy Trust. There was no trust agreement in the record. There's no way to connect what ---- whether or not the trust arrangement was legal, illegal, anything. There's no connection to the Research Foundation. Guilty knowledge, all the ---- all this stuff that the Government is arguing that the jury heard was a proper jury consideration. I said so in my reply, but only after a First Amendment instruction had been given, and it wasn't. That was the wrong here. Truth, whether or not Mr. Ortiz believed what he said, isn't the issue in the First Amendment. It isn't in the good faith instruction, because if he didn't believe it, he didn't have good faith. But the First Amendment permits you to have an opinion unless you incite imminent lawlessness with it and unless you intend to. It doesn't say that you've got to believe your opinion. Now, Mr. Ortiz testified that he did believe it, but that's not the question in the First Amendment analysis. The good faith instruction doesn't get there, and Freeman says so. As to the First Amendment instruction issue, how is your client and Mr. Hardy situated? Very differently. I apologize. Very differently, and I've described how in my brief. But in a nutshell, and I don't want to take too much time away from my colleague, my client offered his opinion to anybody willing to accept it and got paid for it a little bit from the Research Foundation. But he didn't participate in the other activities which were subject to the government's evidence of the case. It's contrasted by what the evidence of Mr. Hardy was. Exactly. All right. Exactly.  Mr. Cohan. Thank you, Your Honor. I just want to respond to a few of the remarks that the government made, such as that Mr. Hardy had, quote, decided that he was not required to file, and as a result of this so-called decision, he's locked into cement and can't change his mind or be influenced by subsequent events, which simply ignores the human condition. I mean, Mr. Hardy's decision that he was not required to file was something that he had to revisit every year, at least once a year, and he was filing these annual statements. But the evidence that the district judge excluded was crucial to Mr. Hardy's and Ms. Supnett's, and for that matter, Mr. Kaling's conclusions, I can't speak for Mr. Cassidy because I don't know whether and to what degree he relied on it. But the key to the prosecution against Mr. Hardy was not the fact that it was a money laundering sting and he was acquitted, but rather that at that trial, the evidence was adduced in excruciating detail about Mr. Hardy's, quote, anti-tax activities, that he was selling this reliance defense package, that he wasn't filing tax returns, that he was encouraging other people, at least, to study this material and to reach the same conclusion. But the key to all that in terms of Hardy's belief and Ms. Supnett's belief was the government declined to prosecute and conceded. In fact, the statements that Mr. Hardy wanted to introduce were admissions that, quote, from the special agents, they didn't have a prosecutable case against Mr. Hardy. Now, again, that's why this is relevant to the Moran situation and that rule. Mr. Hardy and Ms. Supnett were entitled to testify to facts and circumstances that led them to believe that they were not required to file income tax returns. It was for the jury to make the determination whether they credited such testimony or not. There was another remark made about the wonderful system you could purchase from the Research Foundation by the government in connection with Mr. Ortiz. Well, the wonderful system was a system that only was to be used by people who were likely to be prosecuted for willful failure to file. There are all kinds of peculiarities and inconsistencies in every aspect of the defense and in the prosecution of the case. And that's why these nuances had to be allowed before the jury. And the government also said, well, Mr. Hardy was allowed to testify. Well, Mr. Hardy's testimony was actually largely excluded on page 1 of the reply brief that was filed on behalf of Hardy, Kaling, and Cassidy, and which Ms. Supnett joined. We detail all the evidence that was excluded erroneously by the district court, including Mr. Hardy's desire to subpoena the agents. The court refused to allow those subpoenas and refused to allow that testimony, which would have confirmed and corroborated what Mr. Hardy said and wanted to testify to. How long was the trial? I think it was eight actual days of trial, Your Honor. The other evidence, and I have touched on it, that the judge ruled was rank hearsay were these statements that were relevant to the good faith defense and the IRS agent evidence likewise. This is exactly the same type of evidence that was excluded from the prosecution in the Moran case. And that's why this Court should reverse these convictions. Any questions from any of you, Your Honors? No questions, counsel. Thank you. Thank you, counsel. The case just argued will be submitted for decision, and the Court will adjourn. Thank you.
judges: O'scannlain, Ikuta, Sand